UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
**KAREN LYONS,**

                                        **Plaintiff,**        COMPLAINT

                **-against-**                             ECF CASE

**LORD & TAYLOR LLC d/b/a LORD &
TAYLOR; LORD & TAYLOR ACQUISITION
INC. d/b/a LORD & TAYLOR, LORD & TAYLOR
HOLDINGS LLC d/b/a LORD & TAYLOR
and JOHN DOES CORPORATIONS 1-50 and
RICHARD A. BAKER individually,**

                                        **Defendants.**

------------------------------------------------------------------------X

      Plaintiff Karen Lyons ("Plaintiff" or "Lyons"), by and through her attorneys, Vincent E. Bauer of The Law Offices of Vincent E. Bauer and Jacob Aronauer of The Law Offices of Jacob Aronauer, complaining of Lord & Taylor LLC d/b/a Lord & Taylor, Lord & Taylor Acquisition Inc. d/b/a Lord & Taylor, Lord & Taylor Holdings LLC d/b/a Lord & Taylor (collectively "Lord & Taylor" or the "Corporate Defendants") and John Does 1-50 and Richard Baker ("Baker") individually (collectively herein the "Defendants"), alleges the following:

## NATURE OF THE ACTION

1. This is a civil action brought by Plaintiff to recover unpaid overtime compensation under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff worked for Defendant Lord & Taylor, which is controlled by Defendant Baker.

2. Defendant Baker is the executive chairman of Hudson Bay Company ("Hudson Bay"), the parent company of Lord & Taylor.

3. Plaintiff also brings this action under the Wage Theft Protection Act, for Defendants' failure to provide accurate written notice of Plaintiff's wages and hours in violation of said laws.

4. Plaintiff also brings this action to remedy violations of the retaliatory provisions of the FLSA and NYLL.

5. Plaintiff seeks injunctive and declaratory relief against Defendants for Defendants' unlawful actions, compensation for Defendants' failure to pay overtime wages, and liquidated damages, compensatory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs, pursuant to the FLSA and the NYLL.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. §§ 216(b)(c), and 217; and 28 U.S.C. § 1337

7. This Court has supplemental jurisdiction over the New York state law claims under the principles of pendent and ancillary jurisdiction.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred herein within the Southern District of New York.

## PARTIES

**Plaintiff Karen Lyons**

9. Plaintiff Lyons worked for Defendants from July 2014 through January 31, 2018.

10. Plaintiff Lyons was a covered employee within the meaning of the FLSA and the NYLL.

**Defendants**

**Richard Baker**

11. Through Hudson Bay, Baker maintains control, oversight, and the direction of the following clothing department stores: Lord & Taylor, Saks Fifth Avenue and Gilt.

12. Defendant Baker does business in New York and is sued both individually as well as in his capacity as an owner, officer, and/or agent of Lord and Taylor.

13. Defendant Baker exercised sufficient control over Lord and Taylor to be considered Plaintiff's employer under the FLSA and the NYLL, and at all times material hereto said Defendant had the authority to hire and fire employees and established and maintained policies regarding the pay practices of Plaintiff Lyons.

14. In addition, Defendant Baker required Plaintiff to perform job duties for Baker and his wife that were personal in nature and not on behalf of the Corporate Defendants.

15. As a result, the Corporate Defendants and Baker are joint employers of Plaintiff and are liable jointly and severally.

16. John Doe Corporations 1-50, the names being fictitious, are the entities or persons doing business under the name of Lord & Taylor during the time periods referenced in this complaint.

**Lord & Taylor Holdings LLC d/b/a Lord & Taylor**

17. Lord & Taylor Holdings LLC is a foreign limited liability company having its principal place of business at 225 Liberty Street, New York, NY 10281.

18. At all times relevant to this action, Lord & Taylor Holdings LLC has been an "enterprise engage in interstate commerce" within the meaning of the FLSA.

19. On information and belief, Lord and Taylor Holdings LLC has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person; and (2) an annual gross volume of sales in excess of $500,000.00.

**Lord & Taylor LLC d/b/a Lord & Taylor**

20. Lord & Taylor LLC is a foreign limited liability company having its principal place of business at 225 Liberty Street, New York, NY 10281.

21. At all times relevant to this action, Lord and Taylor, LLC has been an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22. On information and belief, Lord and Taylor LLC has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person; and (2) an annual gross volume of sales in excess of $500,000.00.

**Lord & Taylor Acquisition Inc. d/b/a Lord & Taylor**

23. Lord & Taylor Acquisition Inc. is a foreign limited liability company having its principal place of business at 225 Liberty Street, New York, NY 10281.

24. At all time relevant to this action, Lord & Taylor Acquisition Inc. has been an "enterprise engage in interstate commerce" within the meaning of the FLSA.

25. On information and belief, Lord and Taylor Acquisition Inc. has (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by a person; and (2) an annual gross volume of sales in excess of $500,000.00.

## FACTS

**Plaintiff Lyons' Employment at Lord & Taylor**

26. Baker and the Corporate Defendants jointly employed Plaintiff.

27. Plaintiff Lyons worked as a flight attendant for both the Corporate Defendants as well as a personal assistant for Baker and Baker's wife from July 2014 through January 31, 2018.

28. Lyons was responsible for working on all flights of the Corporate Defendants as well as Baker and Baker's wife personally.

29. These activities related to the plane owned by an affiliate (the "Company Plane"). On information and belief, the Company Plane was owned by an affiliate of Hudson Bay, the company of Lord & Taylor.

30. Plaintiff Lyons was a non-commercial flight attendant operator under 14 CFR Part 91- General Operating and Flight Rules of the U.S. Federal Aviation Administration.

31. Since Plaintiff worked as a non-commercial flight attendant, she is non-exempt from the protections of the Fair Labor Standards Act and the New York Labor Law.

32. Plaintiff Lyons' job duties for Defendants as a non-commercial flight attendant included, but were not limited to, the following: serving beverages, meals, or snacks, taking care of Baker and Baker's wife's needs, attending pre-flight briefings on details of the flight, cleaning the cabin between flights and demonstrating the use of safety and emergency equipment.

33. Plaintiff performed the above-mentioned tasks on behalf of Lord and Taylor but, in addition, was also required to work as a personal assistant for Baker and his wife (the "Bakers") because the Bakers frequently used the Company Plane for personal matters.

34. Plaintiff also had to make preparations prior to the flights of the Company Plane. For example, Plaintiff was required to ensure the Company Plane was stocked with the foods requested by the Bakers. For example, Plaintiff was required to have both paleo and non-paleo food options for the Bakers and the other individuals for the flights.

35. Plaintiff was also required to ensure that all of Baker's personal items were retrieved from the Company Plane.

36. In addition to Plaintiff's regular work duties, she was also required to be available for Defendant Baker's personal demands "on call." In other words, Plaintiff was required to keep her smart phone on her at all times so she could respond to the Bakers' voluminous requests.

37. These personal demands were in addition to Lyons' job duties as a non-commercial flight attendant for the Company Plane. For instance, Lyons was required to take care of Defendant Baker's dog "Bella", such as feeding him, walking Bella outdoors in poor weather conditions (anywhere from 15 minutes to 30 minutes twice at day) and removing dog waste.

38. When stationed in Europe, Plaintiff would be required to act as a personal assistant on behalf of the Bakers. For example, Plaintiff had to take Bella to the veterinarian while stationed in Europe.

39. Other times, prior to a flight, Plaintiff was required to pick up dry cleaning for the Company Plane's upcoming trip.

40. In addition, Plaintiff was required to fly to Naples, Florida to accompany Baker's wife on a personal medical appointment that had nothing to do with the corporate defendants. Before, during and after the flight when in Naples, Baker's wife dictated the job duties that Plaintiff had to perform on her behalf.

41. Plaintiff was never required to "clock in" when she arrived at the airport. Nor was Plaintiff required to "clock out" when she left the airport after a flight on the Company Plane.

42. Plaintiff was never required by Defendants to provide any notations of her hours.

43. On information and belief, Defendants never maintained records of Plaintiff's hours.

**Plaintiff's Employment Relationship with New York**

44. Throughout Plaintiff's employment with Defendants, Plaintiff would fly in the Company Plane out of Westchester Airport in White Plains, NY.

45. From 2015 through the end of Plaintiff's employment, approximately 80% of the time the Company Plane would fly out of Westchester Airport.

46. At the Westchester Airport, Defendants would provide Plaintiff with directives. For example, Defendants would request that Lyons serve them meals and beverages, attend pre-flight briefs, clean the cabinet and demonstrate the use of safety and emergency equipment.

47. Plaintiff would also receive directives from Defendants in preparation for the flights out of Westchester Airport. For example, Plaintiff would receive text messages and e-mails from Defendants with respect to job duties she had to perform to ensure that the flight from the Westchester Airport went smoothly. For example, Plaintiff would receive directives to bring food, dry cleaning and other personal items of the Bakers to the Westchester Airport.

48. The acts complained of, namely Plaintiff's job duties and activities on behalf of Defendants, arose from Baker's business activities in New York.

**Plaintiff was Employed by Lord &Taylor**

49. It is clear that Lord & Taylor, along with Baker, employed Plaintiff. However, it is less transparent which Lord & Taylor entity employed Baker.

50. Plaintiff's paystub listed that she was paid by Lord & Taylor.

51. Plaintiff's W-2 statements listed Lord & Taylor as her employer.

**Plaintiff's Work Schedule and Salary at Defendants**

52. Plaintiff did not have a regular "9 to 5" schedule with Defendants. Some weeks Plaintiff would work significantly over 40 hours a week and other weeks Plaintiff would work less than 40 hours a week.

53. At all times, regardless of her location, Plaintiff was required to be "glued" to her phone to check for voice mails, text messages and e-mails from Defendants. In addition, Plaintiff was not permitted to be more than 3 hours away from the Westchester Airport in the event that Baker needed to fly to a business meeting.

54. In the course of the week, there would be days when Plaintiff would spend a significant amount of time reviewing e-mails, order catering, shop for specialty items, make hotel and car reservations and prepare the Company Plane for trips.

55. These types of routine job duties could take anywhere from 6 to 10 hours of a day for Plaintiff to accomplish.

56. In addition, between preparing for departure, the flight itself and post-flight work, a flight itself could take up the greater part of a day.

57. For example, there would frequently be days where Plaintiff would spend hours reviewing and answering e-mails related to work, order catering for upcoming trips, shop for specialty items for upcoming trips and go to the "hanger" at the airport to ensure that the Company Plane was ready for a trip.

58. Plaintiff would also work on the weekends on behalf of Defendants. It would not be unusual for Plaintiff to spend a significant portion of the weekend answering e-mails and text messages as they related to upcoming trips.

59. This is because Baker would usually fly out on Sunday nights or Monday mornings. As a result, on Sundays Plaintiff would go to the airport hanger to prepare for the upcoming flight. In addition, on the weekend, Plaintiff would also be responsible for making upcoming hotel and car reservations for the crew of the Company Airplane.

60. Thus, for the weeks where Plaintiff would have to prepare for a flight, fly back and forth from the actual location and perform work for Defendants while stationed in the City that Defendants flied to, Plaintiff worked between 60 to 65 hours in a week.

61. Trips to Europe also resulted in Plaintiff working more than 40 hours in a week.

62. The trips to Europe would usually last between 4 to 9 days and occurred approximately once a month.

63. The trips to Europe would usually begin on a Sunday or Monday.

64. When stationed in Europe, Lyons worked approximately 12 hours each day she was stationed in Europe. In addition, Plaintiff would have to perform additional prep work for the European trips.

65. While stationed in Europe, Plaintiff would be required to engage in the previously discussed personal tasks on behalf of the Bakers. For example, while in Europe Plaintiff would be required to take care of the Bakers' dog and the Bakers' meals, hotel modifications and car rentals along with other personal needs.

66. As a result, when stationed in Europe, Plaintiff would work approximately 75 hours a week.

67. Even though Plaintiff was not exempt, throughout Plaintiff's employment she was not paid hourly. Rather, Plaintiff was paid a weekly salary regardless of how many hours she worked.

68. Plaintiff's paystubs (which she received bi-monthly) always incorrectly listed her as having worked exactly 83 hours.

69. On information and belief, Defendants deliberately chose 83 hours because 83 hours for half a month roughly averages out to 40 hours per week. In other words, Defendants did not want to list Plaintiff as having worked *any* overtime because, on information and belief, they knew she was not exempt under the FLSA and NYLL.

70. Plaintiff was only paid for the first 40 hours she worked each week and not paid for any overtime.

71. In 2014, Plaintiff received a base salary of $1,634.62 per week.

72. From January 2015 through May 2015, Plaintiff received a base salary of $1,769.23 per week.

73. From May 2015 through March 2016, Plaintiff received a base salary of $1,769.23 per week.

74. From March 2016 through January 2018, Plaintiff received a base salary of $1,801.92 per week.

**Plaintiff is Terminated
and Unlawfully Retaliated Against by Defendants**

75. On January 31, 2018, Plaintiff was terminated by telephone by Defendants.

76. On Thursday, February 15, 2018 counsel to Plaintiff raised in a telephone conference with counsel for Defendants the fact that Plaintiff was entitled to significant unpaid overtime under the FLSA and NYLL.

77. In mid February 2018, Plaintiff applied for unemployment insurance.

78. Even though Defendants fired Plaintiff, Defendants opposed Plaintiff's request for unemployment. In bad faith Defendants claimed that Plaintiff had resigned from employment with Defendants.

79. Defendants' decision to oppose Plaintiff's request for unemployment was in retaliation for Plaintiff making claims for unpaid overtime under the FLSA and NYLL.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act-Overtime Wages**

80. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

81. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff.

82. Plaintiff worked in excess of forty hours during all workweeks in the relevant period.

83. Defendants willfully failed to pay Plaintiff the appropriate overtime premiums for all hours worked in excess of 40 hours per workweek, as required by the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations.

84. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants are aware or should have been aware that the practices described in this Complaint were unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

85. Because Defendants' violations of the FLSA have been willful, a three year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq*.

86. As a result of Defendants' willful violations of the FLSA, Plaintiff has been deprived of overtime compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**SECOND CAUSE OF ACTION**
**New York Labor Law-Unpaid Overtime**

87. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

88. Defendants failed to pay Plaintiff the proper overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

89. Defendants failed to pay Plaintiff one and one-half times her regular hourly rate of pay for all work in excess of forty hours per workweek.

90. Through their knowing or intentional failure to pay Plaintiff overtime wages for hours works worked in excess of forty hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations.

91. Due to Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Annual Wage Notices**

92. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

93. Defendants have willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiff as her primary language, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

94. Through their knowing or intentional failure to provide Plaintiff with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Relations.

95. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workweek before December 29, 2014 and fifty dollars for each workday beginning on December 29, 2014 that Defendants failed to provide Plaintiff with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

**FOURTH CAUSE OF ACTION**
**New York Labor Law-Failure to Provide Wage Statements**

96. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

97. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

98. Through their knowing or intentional failure to provide Plaintiff with the wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

99. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of one hundred dollars for each workweek before December 29, 2014 and two hundred and fifty dollars for each workday beginning on December 29, 2014 that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five

thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

**FIFTH CAUSE OF ACTION**
**Unlawful Retaliation in Violation of the FLSA §215(a)(3))**

100. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

101. 29 U.S.C. § 215(a)(3) makes it unlawful for an employer "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceedings under or related to this chapter [of the FLSA]."

102. Defendants violated the FLSA by opposing in bad faith Plaintiff's claim for unemployment insurance. Defendants falsely stated that Plaintiff resigned even though they fired her. Defendants said that Plaintiff resigned as a form of retaliation because she complained that she had money owed to her under the FLSA.

103. As a direct and proximate consequence of Defendants' intentional, unlawful, and retaliatory employment policies and practices, Plaintiff has suffered and continues to suffer, monetary damages.

104. By the foregoing reasons, Plaintiff seeks relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid unemployment insurance, interest, attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### Unlawful Retaliation in Violation of NYLL § 215(1)(A)

105. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

106. Pursuant to NYLL § 215(1)(a), "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company shall discharge, penalize, or in any other manner discriminate or retaliate against any employee because (i) because such employee has made a complaint to his or her employer…that the employer has violated any provision of this chapter…"

107. Defendants violated the NYLL by opposing in bad faith Plaintiff's claim for unemployment insurance. Defendants falsely stated that Plaintiff resigned even though they fired her. Defendants said that Plaintiff resigned as a form of retaliation because she complained that she had money owed to her under the NYLL.

108. As a direct and proximate consequence of Defendants' intentional, unlawful, and retaliatory employment policies and practices, Plaintiff has suffered and continues to suffer, monetary damages.

109. By the foregoing reasons, Plaintiff seeks relief as may be appropriate to serve the purposes of the anti-retaliation provision, including but not limited to an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid unemployment insurance, interest, attorneys' fees and costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the entry of an order and judgment against the Defendants Lord & Taylor LLC, Lord & Taylor Acquisition LLC, Lord & Taylor Holdings LLC and Richard Baker, Richard Baker jointly and severally, as follows:

(a) Damages for the unpaid overtime due to Plaintiff in an amount to be determined at the trial of this action, liquidated damages as provided by the FLSA, interest, attorneys' fees, and the cost of this action;

(b) Damages for unpaid overtime due to Plaintiff in an amount to be determined at the trial of this action, liquidated damages as provided by the NYLL, interest, attorneys' fees, and the cost of this action;

(c) Penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6, § 198;

(d) Penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars as provided for by NYLL, Article 6, § 198;

(e) Awarding damages as a result of Defendants' failure to furnish a notice at the time of hiring pursuant to NYLL;

(f) Damages for lost unemployment insurance, liquidated damages and attorneys' fees;

(g) For prejudgment interest on the foregoing amounts;

(h) For the costs and disbursements of this action, including attorneys' fees; and

(i) For such other further and different relief as this Court deems just and proper.

Dated: March 2, 2018
New York, New York

Respectfully submitted,

**Law Offices of Vincent E. Bauer**

/s/ *Vincent Bauer*
Vincent E. Bauer
112 Madison Ave, 5th Floor
New York, NY 10016
(212) 575-1517

**The Law Offices of Jacob Aronauer**

*/s/ Jacob Aronauer*_____
Jacob Aronauer
225 Broadway, 3rd Floor
New York, NY 10007
(212) 323-6980

*Attorneys for Plaintiff*